**UNITED STATES of America**

v.

**James BERNETT, Roy L. Mann, and Carl Close.**

Crim. A. No. 21640.

United States District Court
D. Maryland, Criminal Division.

Sept. 13, 1954.

George Cochran Doub, U. S. Atty., Baltimore, Md., for plaintiff.

Roy L. Mann, in pro. per.

CHESNUT, District Judge.

Roy L. Mann, one of the three defendants in the above case, has now filed a

motion for modification of the sentence imposed on him on June 3, 1949, by the suspension of a portion of that sentence and the placing of the petitioner on probation upon the suspension of the sentence.

The indictment was filed May 17, 1949 containing 7 counts. The first three counts, based on section 2113 of title 18 of the United States Code, charged in substance the robbery of the Occident Federal Savings and Loan Association (a federal savings and loan association) in Baltimore City on or about January 28, 1949, of $2,868. The fourth, fifth and sixth counts also based on title 18, sec. 2113, charged the defendants with robbery of a branch office of the Union Trust Company of Maryland, a member of the Federal Reserve System, in the amount of $30,000 on or about February 19, 1949. Some of the counts in each of the first and second groups charged in appropriate language the theft or robbery under circumstances commonly referred to as "armed robbery". The seventh count, based on title 18, sec. 2314, charged the defendants with interstate transportation from Baltimore, Maryland, into Virginia, of about $30,000 theretofore stolen from the branch office of the Union Trust Company.

After trial of two days in which the defendants were represented by competent and experienced counsel of their own selection, the jury found a general verdict of guilty on all the charges. The sentence imposed by the court on June 3, 1949, was—

"That the Defendants each be committed to the custody of the Attorney General of the United States for imprisonment for a period of Fifteen years and to pay a fine of Five thousand dollars on the 1st, 2nd and 3rd counts of the Indictment as a group, and for the period of Twenty years and to pay a fine of Ten thousand dollars on the 4th, 5th and 6th counts of said Indictment as a group; terms of imprisonment as to the 1st, 2nd and 3rd counts and as to the 4th, 5th and 6th counts to run consecutively and fines to be cumulative; that is that the term of imprisonment be for Thirty-five years and fines to be Fifteen thousand dollars; and that he be imprisoned for Five years on the 7th count of the Indictment and pay a fine of One dollar; all fines to be *cumulative*; and that he be further committed in default of payment thereof; sentence on the 7th count as to imprisonment to run *concurrently* with sentence imposed on the 1st, 2nd and 3rd counts of the Indictment, and that the Defendant pay the costs of the case."

The defendants began at once the service of the sentences. There was no motion for a new trial and no appeal was taken from the judgment; but each of the defendants has heretofore separately filed one or more motions to vacate the sentence as to him. Each of these motions has been denied and where appeal was taken the order was affirmed. The defendant Mann, the present petitioner, has heretofore filed three such motions to vacate the sentence. The opinion denying the motion may be found in D.C., 92 F.Supp. 26, affirmed 4 Cir., 183 F.2d 1024. A second motion to vacate the sentence, filed by Mann on August 18, 1952, was denied and apparently no appeal taken. On October 23, 1953 he filed a third motion to vacate the sentence which was also denied.

The defendant Close filed a motion to vacate on February 11, 1952. It was denied by this court, 103 F.Supp. 39. On appeal the order was affirmed, Close v. United States, 4 Cir., 198 F.2d 144, certiorari denied 344 U.S. 879, 73 S.Ct. 175, 97 L.Ed. 681.

Mann's present motion or petition is not to vacate the sentence but to modify it by now suspending that portion of the sentence which prescribed the term of imprisonment for 20 years for the second armed robbery, consecutive to the 15 year term imposed for the first armed robbery. This motion is made 5 years subsequent to the imposition of sentence and during the time of service of the sen-

tence of 15 years for the first offense. Under the applicable statute with respect to release of prisoners on parole, Mann would be eligible for release on parole at the expiration of one-third of the combined sentence of 35 years, that is in 1961. One apparent purpose of the present motion seems to be a shortening of time when the defendant will be eligible for parole to one-third of the 15 year sentence.

The motion now filed by or on behalf of Mann is a lengthy document submitting an argument and the citation of many decided cases with respect to practice and procedure under the Probation Act, and submitting the contention that where, on an indictment containing several counts, there is a sentence on one or more of the counts followed by a sentence on other counts made consecutive to the first sentence, probation, though not granted at the time of imposing the sentence by the court, may nevertheless be granted by the court *at any time thereafter* prior to the beginning of the consecutive sentence. The motion, really in the form of a brief of the law thought to be applicable, is well expressed and refers with substantial accuracy to numerous judicial decisions which I do not find support the precise legal point which is here presented, with the exception, however, of Kirk v. United States, 9 Cir., 185 F.2d 185, which is precisely in point and does support the contention submitted. That case was decided in 1950; but in the latest case dealing with the precise point which has come to my attention, the contrary conclusion, one judge dissenting, was reached by the 8th Circuit in the case of Phillips v. United States, 212 F.2d 327, with respect to which I am informed by the Clerk of the Supreme Court that the petition for certiorari was dismissed because "out of time". The opinion in the Phillips case is by Circuit Judge Sanborn and is a thorough and comprehensive survey of the whole Probation Act now codified in title 18, § 3651 et seq., of the United States Code. Judge Sanborn's opinion is so thorough and convincing to me that despite the prior contrary holding of the 9th Circuit, I have very serious doubt whether, after the imposition of the sentence in this case and prior to the beginning of the consecutive term, the court has power under the Probation Act to grant a modification of the sentence by suspending the consecutive term.

█ In order to pinpoint the precise question presented it may be helpful to exclude various judicial decisions under the Probation Law which on their facts do not present the particular situation here involved. I take it to be clear enough under the Probation Law that at the time of imposing a sentence (other than one for death or life imprisonment) on an indictment containing several counts, where the authorized punishment is a fine or imprisonment or both, the sentence may include probation either as to the fine or imprisonment or as to both, or may impose a sentence of fine and imprisonment on one count and suspend sentence with probation on one or more other counts. But it is also clear that where there is one general sentence which is valid as to all counts the court may not under the probation statute, after the defendant has begun the service of the sentence, modify that sentence by granting probation (at least after the expiration of 60 days from the sentence), Rule 35, Fed.Rules Crim.Proc. 18 U.S.C.A., United States v. Murray & (Cook v. United States), 275 U.S. 347, 48 S.Ct. 146, 72 L.Ed. 309. It is also clear even where probation is not granted contemporaneously with the pronouncement of the sentence it may be validly granted at any time before the defendant enters upon the service of the sentence imposed, as for instance, where the sentence imposed is made to become effective after the expiration of a prior sentence of the same defendant in another court. See Kelley v. United States, 10 Cir., 209 F.2d 638, 639.

██ When a district judge imposes sentence on an indictment containing several counts it is optional whether the sentence be one general sentence to cover all the counts of the indictment or the

total sentence is apportioned to the several counts of the indictment. If the sentence imposed does not exceed the aggregate of sentences authorized for the several counts of the indictment cumulatively, the general sentence is good; but in this Circuit it has long been considered the better practice to apportion the sentence between the several counts, so that in the event of appeal, if the evidence is found not to justify the sentence on one or more of the counts, the case generally can be finally disposed of on appeal by affirmance of that portion of the sentence apportioned to the good count, and a reversal as to the other part of the sentence not sustained by the evidence. Neely v. United States, 4 Cir., 2 F.2d 849, opinion by Judge Rose.

As pointed out so clearly by Judge Sanborn's opinion in the Phillips case, the probation statute, together with the statutes governing the parole of federal prisoners, has recently been codified in revised title 18 of the Code. Prior to the Probation Act of 1925 the federal district court was not authorized to indefinitely suspend the imposition of sentence in a criminal case. Ex parte United States, 242 U.S. 27, 37 S.Ct. 72, 61 L.Ed. 129. It is also to be remembered that until comparatively recent legislation the court had no power to modify a judgment after the expiration of the term of court. Now by rule 35 of criminal procedure, the term "sixty days" is substituted for the prior authorized practice with respect to the expiration of the court term.

I appreciate that the present motion to suspend a part of the sentence is technically different from a motion to reduce the sentence within 60 days and therefore, strictly speaking, at least, the matter is not controlled by rule 35 but must depend upon the proper construction and application of the probation statute. The exact legal question, therefore, is what was the intention of Congress in giving the power of probation in the Probation Act of 1925 as amended and as now principally to be found in section 3651 of title 18. In finding this intention it is important to understand what was the power or limitation on power of the courts at the time of the passage of the probation statute. And I think it is also relevant to consider how the statute has been generally understood and applied by federal courts since its passage. This has been very carefully considered in Judge Sanborn's opinion in the Phillips case and I may add has been the understanding in this court for more than 20 years past.

It will be noted that the precise phraseology of the probation statute as passed in 1925 provided (see 43 Stat. 1259, sec. 724 of title 18) that the power to grant probation was "after conviction". The revision in 1948, title 18, § 3651, now substitutes the preposition "upon". The reviser's notes to section 3651, title 18, U.S.C.A., state in effect, with regard to changes in phraseology, that they were rather for clarity of expression than for change in substantial effect. In the Kirk case in the 9th Circuit emphasis is placed upon the reviser's notes, and the conclusion seems to be based upon the thought that the word "upon" is practically the same in the context as the word "after". See also Kelley v. United States, 209 F.2d 639. But this does not seem particularly important to me in aid of the construction, because it was not understood by the court that the Probation Act before or after revision gave power to suspend a sentence years after the imposition of the sentence. Indeed it would seem to the contrary that the use of the word "upon" is more apt than the word "after" as the procedure has been here understood. It is therefore my present view, in the absence of a Supreme Court decision on the precise point involved, that it is at least very doubtful indeed that the court has the authority to now suspend the 20 year consecutive sentence. The petitioner's contention is that because he has not yet begun to serve the 20 year sentence the power of the court exists up to and until the expiration of the 15 year sentence which he is now serving. This would presumably not be until 1964.

It is perhaps also relevant to look at the wording of the sentence in the particular case. While there is a 15 year term provided for the first three counts as a group and consecutive thereto a 20 year term for the 4th, 5th and 6th counts, the sentence as imposed also stated that the total term of imprisonment was to be 35 years. And the sentence of 5 years on the 7th count was made concurrent with the 15 year sentence on the first three counts as a group. The combined maximum under all seven counts might have been 60 years.

■ While the question as to the intent of Congress in enacting and amending the probation statute is to be gathered from the wording of the Act in the light of prior existing law, (in the absence of clear legislative history to the contrary, as to which I find none) perhaps it is also relevant to consider the question of the desirable general policy in criminal jurisprudence. When a district judge imposes a sentence in a criminal case it represents his judgment after hearing the whole of the case in court and with such help as in particular instances he may obtain from a report of the Probation Officer. After sentence is imposed and after the defendant begins the service of his sentence he is in the custody of the Attorney General of the United States in accordance with the applicable statutes, which include particularly title 18, § 4201 et seq., giving power to the United States Board of Parole to parole the prisoner after the expiration of one-third of the sentence. The district judge has little or no opportunity to learn the conduct and behavior of the prisoner after he begins service of the sentence. On the other hand, the Parole Board does have this opportunity and is much better able to determine whether, upon the expiration of one-third of the sentence, it is consistent with the public interest to release the prisoner from confinement on parole. And in the case of a comparatively long sentence it is quite possible, if the court has the power to suspend part of the sentence at any time during the primary sentence

and before the beginning of the consecutive sentence, that the application for the suspension would have to be submitted to a judge other than the trial judge in the particular case who would naturally be much more familiar with the case than another judge who is called upon to act in the matter many years later.

I note in the opinion in the Kirk case and in the dissent in the Phillips case that the construction therein contended for is thought to be consistent with the present tendency of judicial jurisprudence toward humanitarian considerations. In this respect, however, it is to be borne in mind that Congress has very amply provided for this in the parole statute and there is further the authority of the Executive Department to extend clemency by commutation of sentence or pardon. On this point, see the discussion by Chief Justice Taft in the Murray case, 275 U.S. 347, at page 356, 48 S.Ct. 146. Cf. a discussion by Mr. Justice Sutherland in United States v. Benz, 282 U.S. 304, 51 S.Ct. 113, 75 L. Ed. 354, where the power of the court to decrease a sentence during the term is affirmed.

■ If we assume that, despite the conflict of decisions of the two Circuit Courts of Appeals, the power does exist to presently suspend the second portion of the sentence of imprisonment in this case, there still remains the question whether under the provisions of the probation statute the discretion to do so should be exercised in this case at the present time. On that point I have no present difficulty. The evidence shows that the bank robberies were clearly premeditated in both instances, and particularly the second robbery for which the 20 year sentence was imposed was a very aggravated one in the way it was carried out. No testimony was offered on behalf of any of the defendants, and when an opportunity was given them to speak before the imposition of sentence, no one of them had anything to say. Shortly before the conclusion of the trial and during the luncheon recess of the court, the three defendants, while in the

custody of the Marshal in this Court House Building, made what was evidently a planned violent and forcible attack on a deputy marshal in a nearly successful attempt to escape from custody, which was only prevented by the vigilance and courageous action of the Marshal and other deputies. The evidence as to this was not submitted to the jury and so far as I know was in no way known to any of the jurors until after their verdict had been rendered. And, as previously noted, several separate motions have been made by the defendants respectively for a vacation of their sentence, which have been denied.

At the time of rendering the sentence there was no request on behalf of any of the defendants or of their counsel for release upon probation, nor would it have been entertained or granted by the court at the time if it had been made. The only equitable consideration which is offered by the present petitioner, Mann, for suspension of the 20 year consecutive sentence is his statement that he has been an exemplary prisoner during the 5 years of his present service. The nature and circumstances of the offense as revealed in the evidence at the trial 5 years ago, still comparatively fresh in memory which has been from time to time renewed in considering the several motions to vacate the sentence, satisfy me that in the public interest the court would not now be justified in suspending the consecutive term of the sentence.

The present motion of Roy L. Mann for suspension of the 20 year consecutive term is therefore hereby *overruled*. But I will make the order without prejudice to the possible renewal of the motion at some time in the future and before the expiration of the primary 15 year sentence. While I am quite clear that the motion should not be granted at this time it is possible that hereafter the question of the power of the court to grant probation long after the sentence (now in the somewhat uncertain legal status owing to the diverse decisions of the 9th and 8th Circuits) may be rendered certain by the final authoritative decision of the Supreme Court. If, as a result thereof or by statutory change, the existence of the power is established, it may be that a subsequent motion would be submitted to some other judge of this court for his decision, and in that event I think he should have entire freedom of judgment in the matter.